IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE NO. |
| BRANDON REDMOND, | 1:15-CR-284-AT-JKL-3 |
| Defendant. | |

## REPORT AND RECOMMENDATION

Defendant Brandon Redmond is charged in this case with one count of kidnapping, three counts of Hobbs Act robbery, and three counts of brandishing a firearm during a robbery. [Doc. 134 at 3-6.] The case is presently before the Court on Mr. Redmond's pro se Motion to Dismiss the Case [Doc. 531] and his counsel's perfected Motion to Dismiss the Charges Against Him for Failure to Afford Him A Speedy Trial [Doc. 551]. For the reasons that follow, I **RECOMMEND** that the motions be **DENIED.**

**I.    BACKGROUND**

Mr. Redmond was initially charged in this case by way of a superseding criminal indictment in October 2015.[1] [Doc. 49.] On November 5, 2015, he was

---

[1] The government obtained a second superseding indictment in July 2016, which is the operative charging document in this case. [*See* Doc. 134.]

arrested in Tennessee, and following a detention hearing there, a magistrate judge detained him pending trial. [Doc. 77, 78-5.] Mr. Redmond remains in custody at the Robert A. Deyton Detention Facility in Lovejoy, Georgia.

On November 20, 2015, at his first appearance in this district, the Court arraigned Mr. Redmond and appointed counsel to represent him. [Docs. 84, 82.] In December 2016, Mr. Redmond moved for appointment of new counsel, and, following a hearing, on January 17, 2017, the Court granted the motion and appointed Derek Jones to represent him in the case.

Following lengthy pretrial litigation—including multiple evidentiary hearings and motions—the Court set this case for trial beginning October 9, 2018. [*See* Dkt. Entry dated June 29, 2018.] At the government's request, and without opposition from Mr. Redmond or the other co-defendants, the Court reset the trial to December 3, 2018. [Docs. 387, 388.] On November 4, 2018, Mr. Redmond moved to sever his trial, which the Court granted, severing him and co-defendants Dayna Liverman and Anthony Richardson from co-defendant Mario Jackson for purposes of trial. [Doc. 418.] Mr. Redmond then filed a supplemental motion to sever, in which he indicated that he would prefer to be tried separately from all Defendants, but given the option, he preferred to be tried with Mr. Jackson and not with Ms. Liverman and Mr. Richardson. [Doc. 423.] On December 4, the Court

2

clarified its previous order granting severance, stating that it would try Mr. Jackson and Mr. Redmond together first, followed by Ms. Liverman and Mr. Richardson together. [*See* Dkt. Entry dated Dec. 4, 2018.] On that same date, the Court granted Mr. Jackson's motion to continue trial to August 12, 2019, so that his newly-appointed counsel, Jeffrey Ertel, could adequately prepare for trial. [Doc. 429.]

Issues then arose concerning Mr. Jackson's competency to stand trial. Mr. Ertel filed motions for a competency hearing and a psychiatric exam [Docs. 443, 449], which the Court granted, resulting in the continuance of trial to January 27, 2020 [Doc. 457]. On December 8, 2019, Mr. Jackson again moved to continue trial due to the inability to complete competency proceedings before trial. [Doc. 488.] The motion was granted, and trial was reset to April 13, 2020. [*See* Dkt. Entry dated December 13, 2019.] To date, issues relating to Mr. Jackson's competency to stand trial remain pending, which the undersigned discusses further below.

In the meantime, on June 22, 2020, Mr. Redmond filed a pro se motion seeking dismissal of charges against him [Doc. 531], a motion for speedy trial, in which he demanded a speedy trial [Doc. 534], and motions for appointment of new counsel [Docs. 532, 533]. On July 29, 2020, Mr. Redmond's case was decertified, and those pending motions were referred to the undersigned for resolution. [Doc. 547.] On August 7, 2020, I held a hearing on Mr. Redmond's motions for new

3

counsel, which he withdrew. [Doc. 550.] I also gave Mr. Redmond's attorney the opportunity to perfect the pro se motion for speedy trial. [*Id.*]

On August 24, 2019, counsel filed a perfected motion to dismiss. [Doc. 551.] In the perfected motion, Mr. Redmond contends that his Sixth Amendment right to a speedy trial has been violated,[2] and, thus, the charges against him should be dismissed. [*Id.* at 3.] The government opposes his motion. [Doc. 562.] Mr. Redmond has filed a reply. [Doc. 563.] The motion is now ripe for resolution.

## II. DISCUSSION

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend VI. The Sixth Amendment speedy trial right attaches "at the time of arrest or indictment, whichever comes first, and continues until the date of trial." *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009) (quoting *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir. 1979)). To determine whether a criminal defendant's constitutional right to a speedy trial has been violated, the court evaluates the following four factors that the Supreme Court identified in *Barker v.*

---

[2] Mr. Redmond does not contend that the delay of trial is a violation of the Speedy Trial Act; thus, I focus my analysis on whether the delay in this case violates Mr. Redmond's constitutional, rather than statutory, right to a speedy trial.

*Wingo*: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972).

The first factor, length of delay, serves as a double inquiry. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010). First, it serves as a threshold inquiry that Mr. Redmond must satisfy before the Court weighs the remaining three factors. *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Second, the inquiry "examines 'the extent to which the delay stretches beyond the bare minimum needed' to satisfy the threshold showing of presumptive prejudice." *Villarreal*, 613 F.3d at 1350 (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)). "The longer the pretrial delay extended beyond the 'bare minimum' necessary to show presumptive prejudice, the stronger the presumption that the pretrial delay prejudiced the defendant." *Id.*

As noted above, Mr. Redmond was indicted in October 2015 and arrested in early November 2015, all over five years ago. Mr. Redmond argues that this five-year delay is more than sufficient to satisfy the threshold for presumptive prejudice under the first Barker factor. [Doc. 551 at 7.] In response, the government concedes that under Eleventh Circuit precedent, the delay is presumptively prejudicial because it exceeds one year, "the dividing line between ordinary and presumptively

prejudicial delay." [Doc. 562 at 4.] But the government maintains that this factor does not weigh in favor of Mr. Redmond because the delay in the case does not approach the eight-year delay that the Supreme Court found to violate a defendant's Sixth Amendment right in *Doggett.* [Doc. 562 at 4.] In support, the government cites *United States v. Bonilla*, 602 F. App'x 667, 668 (9th Cir. 2015), and *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003), in which courts found that twenty-two-month and three-and-a-half-year delays were not excessively long.

Mr. Redmond has the better of the arguments. Though the five-year delay here falls short of the eight-year delay in *Doggett*, this length of time "clearly suffices to trigger the speedy trial enquiry . . . ." *Doggett*, 505 U.S. at 652. Moreover, *Bonilla* and *Serna-Villarreal* do nothing to help the government's position—the lengths of delay presented in those cases were, respectively, forty-two and eighteen months shorter than the delay here. Therefore, the Court will move on to the other factors in the *Barker* analysis.

In the second *Barker* factor, the Court examines the reasons for the delay. "The government bears the burden of establishing valid reasons for the delay." *Villarreal*, 613 F.3d at 1351. "Different reasons for delay are accorded different weight in the *Barker* analysis. Government actions which are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding that a speedy trial

6

violation occurred." *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) (citation omitted). But delays that occur for valid reasons, like overcrowded courts, will not be accorded heavy weight against the government. *Id.* "Furthermore, the Supreme Court has reasoned that negligence is more a neutral act that should not be weighed as heavily as bad faith." *United States v. Bibb*, 194 F. App'x 619, 622 (11th Cir. 2006).

Mr. Redmond asserts that "[t]he Government bears a significant responsibility for the delay in this case." [Doc. 551 at 7.] In particular, he points to issues with Mr. Jackson that have led to the delay. Mr. Jackson, who is now represented by his fourth attorney, moved for a competency hearing on June 4, 2019. [Doc. 443.] Mr. Redmond contends that the government was not diligent in obtaining its own mental health examination of Mr. Jackson, which in turn, resulted in this case not being tried before the suspension of jury trials due to COVID-19. [Doc. 551 at 7-8.]

The government responds that "nearly all of the delay is attributable to pretrial litigation or a substitution of counsel by Redmond or his co-defendant Jackson's pretrial litigation and competency issues." [Doc. 562 at 6.] The government highlights the following events. In October 2015, Mr. Redmond filed a motion to suppress [Doc. 97], and later adopted a motion to dismiss [Doc. 108],

7

in February of 2016. He then moved to continue the evidentiary hearing. [Doc. 115]. In July 2016, Mr. Redmond moved to appoint new counsel [Doc. 133], and later filed a second motion to appoint counsel [Doc. 274]. In January 2017 the Court appointed Mr. Redmond's current attorney. [Doc. 281]. Mr. Redmond then moved to adopt additional motions to suppress and for *Daubert* hearings that Mr. Jackson filed [Doc. 291], and to continue the *Daubert* hearing [Doc. 292]. Following the hearing on those motions, Mr. Redmond sought severance and to be tried with Mr. Jackson only. [Docs. 397, 423.] Following the pretrial conference, Mr. Redmond did not object to Mr. Jackson's motion to continue trial. [Doc. 492.]

In reply, Mr. Redmond acknowledges that he made a change in counsel and engaged in pretrial litigation but contends those actions did not seriously delay the case. [Doc. 563 at 2.] As to his preference to be tried with Jackson, Mr. Redmond asserts that the decision to go to trial with Mr. Jackson is "the lesser of two evils." [*Id.* at 2.] Moreover, he argues that the government made it clear that Mr. Jackson would be tried first, so even if Mr. Redmond was going to be tried alone, it is unlikely that his case would be tried before Mr. Jackson's.

The Court finds that the second factor weighs against finding a speedy trial violation. The delays in this case can be broken down into two phases: the first being the delay due to Mr. Redmond's actions, and the second, the delay due to Mr.

8

Jackson's circumstances. The delay due to Mr. Redmond's actions provides no basis for arguing that the government has violated his constitutional right to a speedy trial. *Schlei*, 122 F.3d at 987 (holding that where the delay was caused by numerous pretrial motions or defendant's substitution of counsel, there was no violation of the Sixth Amendment right to speedy trial). Mr. Redmond requested new counsel and engaged in substantial pretrial litigation. The pretrial suppression motions were decided on July 12, 2018. [Docs. 382, 383]. Mr. Redmond's motion to sever was decided in November and December of 2018. Accordingly, the delay between Mr. Redmond's indictment and arrest in October and November 2015 and the resolution of all his pretrial motions in late 2018 are not the product of bad faith delay by the government.

Turning, then, to the second phase of delay—from roughly late 2018 to the present—this delay is chiefly due to the extreme difficulty in assessing Mr. Jackson's competency to stand trial. As will be discussed, the government bears some blame for that delay, but most of the delay is due to circumstances beyond the government's control.

To recap, on November 27, 2018, the Court granted Mr. Jackson's motion to continue trial to allow Mr. Ertel, who had been newly appointed, time to prepare. [Doc. 424.] On February 12, 2019, the Court continued the trial to August 19, 2019.

[Doc. 429.] Meanwhile, Mr. Ertel raised the issue of whether Mr. Jackson may not be competent to stand trial or assist in his defense. [Doc. 443]. On April 26, 2019, the Court authorized a psychiatric evaluation of Mr. Jackson [Doc. 438], and on June 4, 2019, through counsel, Mr. Jackson filed a motion for a competency hearing to determine his mental fitness to stand trial [Doc. 443]. In that motion, Mr. Jackson indicated that his retained psychiatrist concluded that he is not competent to stand trial. [*Id.*] On June 26, 2019, the government filed a motion to conduct its own psychiatric examination of Mr. Jackson, which the Court granted. [Docs. 449, 457.] The Court set a competency hearing for January 10, 2020, and on November 22, 2019, the case was decertified for the undersigned to conduct that hearing. [Doc. 481.]

At a status conference before the undersigned on December 5, 2019, counsel for Mr. Jackson and counsel for the government advised the Court that the defense expert's report had, in fact, not yet been finalized, and that the government had yet to conduct its own examination. [*See* Doc. 486.] The undersigned set a deadline of December 17, 2019 for the parties to complete the examinations and exchange their reports; however, the parties were unable to meet that deadline because the government was unable to get access to Mr. Jackson. [Docs. 486, 487; *see also* Dkt. Entry dated Nov. 22, 2019.] Following a teleconference with Mr. Jackson's counsel

and counsel for the government on December 18, 2019, the government was given until January 6, 2020, to furnish its final expert evaluation report as to Mr. Jackson and his competency. [Doc. 493.] The government thereafter informed the Court that it was unable to meet that deadline because Mr. Jackson refused to meet with the government's expert. The government moved to compel Mr. Jackson's cooperation with the expert conducting the psychiatric evaluation [Doc. 495], which the Court granted and ordered Mr. Jackson to undergo a competency examination at the facility where he is detained [Doc. 497 at 10]. The Court also ordered that the parties' examination reports be filed by January 29, 2020, and set a competency hearing for January 30, 2020. [*Id.*]

On January 23, 2020, the government advised the Court that Mr. Jackson had again refused to cooperate with the government's evaluator. On January 27, 2020, the Court held another status conference with counsel to discuss how to proceed, and subsequently ordered Mr. Jackson to be transferred to a BOP facility for purposes of a psychiatric or psychological examination. [Doc. 499.] On April 20, 2020, following completion of the evaluation, the Court set the competency hearing for June 23, 2020. [Doc. 520.] Five days prior to the hearing, however, Mr. Jackson requested a continuance to obtain an updated report from his own expert,

11

given concerns over staleness and the conflict between his expert's and the government's expert's conclusions over his competency. [Docs. 528, 529.].

From there, the efforts to have Mr. Jackson evaluated and the competency hearing rescheduled were further stymied by circumstances outside the government's control. For one, the worsening COVID-19 pandemic created logistical, health, and safety concerns for everyone involved in this case, including Mr. Jackson, his counsel, his retained expert, and the BOP and Marshals Service personnel involved with Mr. Jackson. [*See, e.g.*, Docs. 528, 544, 545, 555.] Separately, Mr. Jackson suffered an assault at BOP-Atlanta, where he was detained, which reportedly resulted in some deterioration of his mental and emotional state. [*See, e.g.*, Doc. 555 at 2 n.1.] As a result, Mr. Jackson's expert was unable to evaluate Mr. Jackson in person, and the competency hearing was continued on multiple occasions. [*See* Docs. 505, 529, 543, 546; *see also* Dkt. Entries dated July 16, 2020.] After communications with the parties, BOP, and the Marshals Service, the Court scheduled a status conference on September 4, 2020, to discuss means by which Mr. Jackson's expert could evaluate him remotely. [Doc. 544.] Despite an apparent solution, on the day prior to when the remote examination was scheduled to take place, Mr. Jackson reportedly became destructive, refused to cooperate with BOP personnel, and was placed on suicide watch. Faced with another impasse, Mr.

12

Jackson filed another motion for a competency evaluation at a BOP facility [Doc. 555], which the Court granted on September 11, 2020 [Doc. 557]. As of the date of this Report and Recommendation, the Court has not received confirmation that Mr. Jackson's competency evaluation has been completed, and the competency hearing has not been rescheduled.

The second factor focuses on "whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). In *Barker*, the Supreme Court established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529-30. While deliberate delay "to hamper the defense" weighs heavily against the prosecution, *id.* at 531, delay caused by the defense weighs against the defendant, *Brillon*, 556 U.S. at 90.

Applying that balancing test here, the Court readily concludes that the delay in this case from late 2018 to the present is not Mr. Redmond's fault. But it is not the fault of the government either. Rather, it stems from the unprecedented difficulty in evaluating Mr. Jackson's competency, made worse by the ongoing COVID-19 pandemic.

Mr. Redmond stresses that he is in a catch-22: he argues that his "preference" to be tried with Mr. Jackson was one of necessity and the lesser of two evils. He

additionally argues that even if he had not chosen to be tried with Jackson, the government indicated that Mr. Jackson would be tried first. In other words, no matter what, the timing of Mr. Redmond's trial depends on when Mr. Jackson is ready for trial. Though the Court appreciates Mr. Redmond's frustration, this does not change the calculus. The focus of this Court's inquiry is on the culpability of the government for the delay, and this record simply does not demonstrate that the government has acted in bad faith to delay these proceedings. Therefore, the fact that Mr. Redmond and Mr. Jackson will be tried together is neutral and does not support a finding that Mr. Redmond's Sixth Amendment speedy trial rights have been violated.

The strongest argument Mr. Redmond has to demonstrate bad faith is that the government delayed in obtaining its own psychiatric evaluation of Mr. Jackson for six months between when the government announced its intention to do so and its actual attempt to have him evaluated. But there is no indication that the government acted out of bad faith—at worst, it was negligent. Moreover, since then, the government has worked diligently to complete the psychiatric exam and the competency hearing but it, Mr. Jackson's counsel, and the Court have run into roadblocks that no one could have predicted. Because there is no evidence the government engaged in bad faith, the second *Barker* factor does not weigh heavily

14

against the government. *See, e.g. United States v. Burke*, 673 F. Supp. 1574, 1579 (N.D. Ga. 1986).

The third *Barker* factor—the timeliness of Mr. Redmond's assertion of his speedy trial right—also does not weigh heavily in favor of finding a constitutional violation of Mr. Redmond's right to a speedy trial. Indeed, Mr. Redmond properly concedes this point. [Doc. 551 at 8.] Mr. Redmond waited nearly five years following his initial indictment before demanding a speedy trial.[3] Though on reply he asserts that the delay "does not reflect the Hobson's choice faced by Mr. Redmond," [Doc. 563 at 3], the government's argument that Mr. Redmond did not request severance so that he could proceed to trial more speedily (instead requesting severance so he could be tried with Mr. Jackson) is persuasive.

Because the first three *Barker* factors do not uniformly weigh one way or the other, Mr. Redmond must also demonstrate actual prejudice, which he may do in one of three ways: "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) possibility that the accused's defense will be impaired." *United States v. Dunn*, 345 F.3d 1285, 1296-97 (11th Cir. 2003) (quoting *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996)). The Supreme Court has noted

---

[3] In his pro se motion, Mr. Redmond asserts that he asked his previous attorney to demand a speedy trial in 2016. [Doc. 534.] Even so, that demand does not appear to have been communicated to the government prior to June 2020.

that its prior cases have held that "unreasonable delay between formal accusation and trial threatens to produce all three types of harms." *Barker*, 407 U.S. at 532.

Mr. Redmond admits that he "has not shown prejudice in that his case has suffered," but he argues that he does not have to because he has had to endure oppressive pretrial incarceration and anxiety awaiting resolution of his case [Doc. 551 at 9,10].[4] He further asserts that the risk of contracting COVID-19 makes his pretrial incarceration all the more oppressive. While the Court does not question Mr. Redmond's concerns, they are not enough to meet the fourth *Barker* factor or excuse him from having to show actual prejudice under any of the ways identified in *United States v. Dunn*. At the end of the day, Mr. Redmond "has not demonstrated in any way that the conditions under which he [is] held or the length of his confinement render[s] the delay a constitutional violation." *Dunn*, 345 F.3d at 1297. Nor does his worry, standing alone, satisfy *Barker*'s prejudice prong. *See United States v. Graham,* 538 F.2d 261, 265 (9th Cir. 1976) (rejecting defendant's

---

[4] Mr. Redmond cites *Clark* for the proposition that in cases of government negligence, the concern for substantiating prejudice decreases as the period of delay increases. However, *Clark* also held that "each case must be decided on its own facts," 83 F.3d at 1354, and here, at most an approximate six-month delay is attributable to government negligence—not the entire five-year delay. The six-month delay is insufficient to excuse Mr. Redmond from showing actual prejudice. *See id.* (finding that defendant was required to show actual prejudice when there was a seventeen-month delay).

16

"conclusory allegations of general anxiety and strain" as insufficient evidence of prejudice). Lastly, Mr. Redmond has not shown and cannot show that the delay has prejudiced his defense. Without a showing of actual prejudice, then, Mr. Redmond cannot establish the fourth *Barker* factor.

### III.  CONCLUSION

Accordingly, the undersigned finds that Mr. Redmond has not been deprived of his constitutional right to a speedy trial. It is therefore **RECOMMENDED** that his motions to dismiss the second superseding indictment due to a violation of his constitutional right to a speedy trial [Doc. 531, 551] be **DENIED**.[5]

As there are no further matters relating to this defendant pending before the undersigned magistrate judge, this case is **CERTIFIED READY FOR TRIAL** as to Mr. Redmond.

**IT IS SO RECOMMENDED** this 30th day of November, 2020.

$\underline{\phantom{JOHN K. LARKINS III}}$
JOHN K. LARKINS III
United States Magistrate Judge

---

[5] The Clerk is **DIRECTED** to terminate Mr. Redmond's motion for a speedy trial [Doc. 534] as his demand for a speedy trial need not be made by motion.